## Case No. 11,526.

### RAFFERTY v. MALLORY.

[3 Biss. 362.] [1]

Circuit Court, N. D. Illinois.   Oct., 1872.

TRUSTS—PURCHASE BY ADMINISTRATOR—NOTICE—
DEEDS—RECITALS.

1. An administrator who has bid in in his own name property on the foreclosure of a mortgage belonging to his intestate, holds the same for the benefit of the heirs, and cannot sell the same without authority of the court.

2. An owner of land is bound by all recitals in his chain of title, and where in a deed made by such administrator he conveys in that capacity, a purchaser receives the title with full knowledge of the trust.

3. Such purchaser acquires no title, and the heirs at law can recover the property.

In equity. This was an action by Harriet M. Rafferty and others, heirs at law of William R. Oliver, to recover lands bid in, in satisfaction of a mortgage due the intestate.

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

by a foreign administrator, and sold by him to Isaac M. Mallory, the defendant, without any order or authority of the probate court.

John Milton Oliver, for complainant.

The general rule is that an administrator is not suable and cannot sue outside the jurisdiction appointing him. Story, Confl. Law, § 513. This rule does not exempt the foreign administrator from liability, as administrator in fact or de son tort. He is liable, and is estopped denying his receiving the goods as administrator. Story, Confl. Law, § 514; Campbell v. Tousey, 7 Cow. 64; Parsons v. Lyman, 20 N. Y. 112; Marcy v. Marcy, 32 Conn. 317; Swearinger's Ex'rs v. Pendleton's Ex'rs, 4 Serg. & R. 389; Bryan v. McGhee [Case No. 2,066]; Baker v. Smith, 3 Metc. (Ky.) 264; Wilkins v. Ellett, 9 Wall. [76 U. S.] 740. Independent of any statute therefor, as the administrator sued, here describing himself as administrator, he could take only in such character, and was bound to act for the estate, and that only; this would be true, whether he described himself as administrator or not, and the absence of his name of office would have no effect except as to third parties. Independent of any statute he might purchase land, on a debt, for the estate, and his purchase, in his own name, would not bar either himself or the estate, from the allegation of the fact. By the Illinois statute (1 Gross' St. p. 385, § 50) an administrator is directed to bid in lands, if necessary to save a debt, which shall be assets in his hands, and may be again sold by the order of court, and distributed as personalty; and by Rev. St. 1845, p. 596, § 1, a foreign administrator is enabled to prosecute suits in the same manner as if administration was granted in this state. The effect of this statute is to create ancillary administration by the filing of letters from a foreign state. The right and character of the administrator is as fully established thereby as by the taking out of new letters. 36 Ill. 406. The above statute binds the administrator and his vendees in this case. He filed his letters in compliance with the statute and foreclosed under it.

The foreign administrator, by the statute and compliance therewith, standing as administrator in the courts of Illinois, taking property in satisfaction of a debt due the decedent, holds the property so taken in trust for the estate—i. e., the creditors, or, if none, the heirs, who are entitled to recover the same in equity. Lewis v. Lyons, 13 Ill. 120; Wingate v. Pool, 25 Ill. 121; Fifield v. Sperry, 20 N. H. 338; Gibson v. Bailey, 9 N. H. 172; Thurston v. Kennett, 22 N. H. 160; Webber v. Webber, 6 Me. 127; Johnson v. Bartlett, 17 Pick. 477. The administrator cannot purchase for himself at any sale wherein the estate (or he as administrator) is interested. This applies to judicial sales by the officers of court as well as sales by the administrator in person.

Thorp v. McCullum, 1 Gilman, 614; Price v. Morris [Case No. 11,414]; Willenborg v. Murphy, 36 Ill. 344; Martin v. Wyncoop, 12 Ind. 266; Bank of New Orleans v. Torrey, 7 Hill, 260; Michoud v. Girod, 4 How. [45 U. S.] 503; Schoonmacher v. Van Wyck, 31 Barb. 458. So an administrator purchasing at a sheriff's sale on a judgment against the decedent takes a trust estate. Darcus v. Crump, 6 B. Mon. 363; 7 Barr [7 Pa. St.] 48; Shelton v. Homer, 5 Metc. (Mass.) 462. A purchaser is bound to notice all that appears in the chain of title, and if anything therein warns him he buys at his peril. 2 Lead. Cas. Eq. 169; Morris v. Hogle, 37 Ill. 155; 17 Pick. 477, supra. A claimant through a title by judicial sale is bound to show a judgment, levy and sale. This is in, and an essential part of, the chain of title of which the purchaser is bound to take notice; and so of title by decree. (Hence defendant was bound to look at the judgment or decree and sale, whereby he was fully advised, and not merely put on inquiry, of the representative character of the administrator, and of the mere exchange of the debt for the land, and so still assets in another form. The record of the mortgage was also notice to him.) Wheaton v. Sexton, 4 Wheat. [17 U. S.] 503; Hinman v. Pope, 1 Gilman, 131; Stall's Lessee v. Macalester, 9 Ohio, 19; Jennings v. Stafford, 1 Ired. 404; Seechrist v. Baskin, 7 Watts & S. 403; Blue v. Blue, 38 Ill. 9; 1 McCord, 252.

We have seen that the administrator had no power or right to purchase for himself, and could only take as trustee, and of this rule of law the defendant was bound to take notice; and, 2d, that the record advised the defendant of the representative character of the administrator, whereof he was bound to take notice. It is also true, 3d, a purchaser is bound to know that representatives pursue their powers in the mode pointed out by statute. Perry, Trusts, § 225; Reeder v. Barr, 4 Ohio, 458; Matoon v. Clapp, 8 Ohio, 248; Bonner v. Ware, 10 Ohio, 465; Bell v. Duncan, 11 Ohio, 192. Hence lands can only be sold by the law rei sitae. Goodwin v. Jones, 3 Mass. 518; Bragg v. Massie, 38 Ala. 89; Ventriss v. Smith, 10 Pet. [35 U. S.] 160; Gaines v. De la Croix, 6 Wall. [73 U. S.] 720. The fact that the real estate thus taken for a debt is to be treated as personalty in distribution, and is in a sense in the possession of the administrator and subject more to his control than that of which the decedent died seized, does not give him any personal title to it. Kline v. Moulton, 11 Mich. 370; Meeks v. Hahn, 20 Cal. 620. The deed from Lynn recites that it is as administrator he conveys, and this is conclusive notice to the purchaser. Wormley v. Wormley, 8 Wheat. [21 U. S.] 421. The actual knowledge of defendant's attorney, through whom he negotiated the purchase, bound him. Knowledge by the attorney of the purchaser of the trust estate is actual notice to the buyer, unless

presumptively forgotten by the attorney by lapse of time. Hart v. Farmers' & Mechanics' Bank, 33 Vt. 270; Fuller v. Benett, 2 Hare, 394; Varnum v. Milford [Case No. 16,891]; Abell v. Howe, 43 Vt. 403; Williams v. Tatnall, 29 Ill. 553; Tunstall v. Trappes, 3 Sim. 307; Dunlap v. Wilson, 32 Ill. 523. The appellation as "administrator" in the foreclosure proceedings and deed was notice of the trust. Shaw v. Spencer. 100 Mass. 389; Trull v. Trull, 13 Allen, 407; Williams v. Fullerton, 20 Vt. 346; Blaisdell v. Stevens, 16 Vt. 179. He is a purchaser with notice if the deed made to him warns him by its recitals or references; and this though he has paid his money in full. Wigg v. Wigg, 1 Atk. 384; Corn v. Sims, 3 Metc. (Ky.) 391; Halley v. Oldham, 5 B. Mon. 237.

James L. Stark, for defendant.

BLODGETT, District Judge. The facts in this case, as set forth in the bill, and established by the evidence, are: That on the 29th of April, 1856, one D. B. Stiles, of Ogle county, Illinois, executed and delivered to one W. R. Oliver, of Washington, in the state of Pennsylvania, a mortgage on the west half of the southwest quarter of section 23, township 40, north of range 1 east, situate in said county of Ogle, to secure the payment to said Oliver of $575 in one year from said date; that in the fall of the year 1856 said Oliver died intestate, leaving several children as his heirs at law, of whom the complainant is now the only survivor and heir; that said complainant is now about twenty-one years old, and was under that age when this suit was brought; that, after the death of said Oliver, one William Linn was, by the orphans' court of Washington county, in the state of Pennsylvania, duly appointed administrator of the estate of said Oliver, and entered upon the performance of his duties as such administrator; that said Stiles made default in the payment of the indebtedness secured by said mortgage, and said Linn commenced a suit in chancery in the circuit court of Ogle county, in his name as such administrator, to foreclose said mortgage, in which suit such proceedings were had; that at the March term of said court for the year 1860, a decree of foreclosure was rendered in said suit, directing the sale of said mortgaged premises by the master in chancery of said court, to satisfy the amount secured by said mortgage, together with the costs of said suit, and on the 26th day of June, 1860, said master, in pursuance of said decree, offered said land for sale. and said William Linn bid the same off in his own name for the amount due on said decree. paying in cash only the amount due for costs, about $36; that at the expiration of fifteen months from said sale, said land not having been redeemed, a deed thereof was duly executed by said master in chancery to said Linn, bearing date on the 7th day of

June, 1864, said deed containing a recital of the substance of said decree and the purchase of said land by the complainant in said foreclosure suit; that on the 20th day of January, 1865, said Linn, without any order or authority of the county court of Ogle county, or of any court, sold said land to the defendant, Mallory, for the sum of $1,600 cash, and conveyed the same to him by deed of that date, in which he described himself as administrator of said William R. Oliver, said deed containing, among other things, the following recital: "Being the same land deeded to me as administrator of William R. Oliver, by Joseph Sears, special master." It also appears that said Linn filed as exhibits in said foreclosure suit copies of the letters of administration granted to him by the orphans' court of Washington county, in the state of Pennsylvania, and that the same were made part of the evidence and record in said case. The master's report of the sale of said land under the foreclosure decree stated that the only money paid by Linn on his purchase at the master's sale was the $36.18 costs. Linn has never paid the proceeds of the sale to Mallory to the heirs of Oliver. although said estate does not seem to have been in debt to any considerable amount; but in an account filed in said orphans' court, in 1868, Linn gave the estate credit for draft from Ten Eyck for proceeds of a "lot of ground in Lane, Illinois, and eighty acres of land, $945.95."

There is no direct proof in the case showing that this item refers to this parcel of land; but, from the fact that A. Ten Eyck is the name of the solicitor who attended the foreclosure suit for Linn, and that Ten Eyck lived in the town of Lane, Ogle county, it is probable that this item of the account refers to the land in question; but he never paid the money over to the orphans' court, or otherwise accounted for it than as above. He did not apply it in payment of debts for the estate, nor did he pay it to the estate. Linn is now insolvent. The bill prays that she be declared the sole beneficial owner of said land; that the deed from Linn to Mallory be set aside, or that he be declared to hold in trust for complainant, and for general relief. There is no evidence in the case showing that Mallory had any notice of the trust with which this land was charged in Linn's hands than what is afforded by the record of the foreclosure suit and the deed he received from Linn, and the only question presented is whether there is enough in this record to charge Mallory with notice of the trust under which Linn held this deed. As between the heir or creditors of Oliver and Linn there can be no doubt of this trust. He bid the land off in his own name. at a judicial sale, for the purpose of collecting a debt due the estate of which he was administrator. He paid no money. but the title acquired by the bid stood in lieu of the debt he had theretofore held as administrator of

Oliver. He acquired his title through a judicial proceeding in which he described himself as administrator, and spread upon the records of the court the letters of administration which gave him authority to act in the premises, and without which he could have taken no step in the case. The master who made the sale under the decree reported to the court that he sold the land to the complainant in the case, and that was not William Linn, but William Linn in his official character as administrator of Oliver, and the deed is made in pursuance and completion of such sale. All these facts are as it were ingrained into Linn's title, and form an essential part of it, and although the deed from the master does not describe him by his office, yet it recites all the essential steps in the proceeding, and shows conclusively that the complainant in the foreclosure suit, who was William Linn, administrator, etc., was the party of the second part in the deed. The records in this foreclosure case form public records. All persons are bound to take notice of them. 2 Lead. Cas. Eq. 169; Morris v. Hogle, 37 Ill. 155; Johnson v. Bartlett, 17 Pick. 477. The law presumes the purchaser inspects the public records through which his title is derived before he accepts a conveyance. No person could have inspected the chain of Linn's title to this land without learning that he paid no money for it, except a small amount of costs; that he bought it as administrator of W. R. Oliver, and held it as such when he made his deed to Mallory. All these facts were patent upon the record. But if these recitals in the chain of Linn's title were not enough, we find that when he comes to sell the lands he assumes and purports to act only in his character as administrator, and declares by his deed that the land he is selling is the same land he holds as administrator of W. R. Oliver, by virtue of the deed he has received from Joseph Sears, master in chancery. It is a familiar principle of law that every owner of land is bound by all recitals in his chain of title: and here, in the very act of passing the title to Mallory, Linn injects into it a notice to his grantee that he held it only by virtue of his office. This relieves the case of all doubt. Mallory must be held to have received the title to the land, with full knowledge of the trust with which they were charged, which is equivalent to saying that he knew Linn had no right to sell, and that his attempt to do so was inoperative and void. By the statutes of this state (Rev. St. 1845, c. 57, § 50), an executor or administrator may purchase real estate at sheriff's sale to save a debt, but the property thus purchased becomes assets in his hands, and can only be sold by order of the probate court. In the condition of Linn's title, he had no right to sell this land except by order of the probate court of Ogle county, and all persons dealing with him are bound to take notice of Linn's disability to sell save

as the probate court should authorize him. It is possible that if Linn had applied the proceeds of the sale to Mallory to the payment of the debts of the estate, or had even paid over to the heir, with notice, a court of equity would have protected him, although his conduct might have been illegal; the proceeds having been properly and honestly applied, a court of equity might have sanctioned the irregularity and quieted the title in the purchaser. But this is not the case we are contemplating. In the light of the proof in this case, it shows that Linn has never paid this money either to the estate or its creditors, and has only credited the estate with a part of it, but has not paid over the money in accordance with his credit. When Linn offered to sell, Mallory, the purchaser, should have required him to first obtain an order from the probate court. Having neglected to do that, he must abide the consequences of his own negligence. The case is a hard one for Mallory, it is true, but his own negligence has occasioned it. and he must look to Linn for his redress.

Decree that defendant convey land to complainant within thirty days, or in default, master in chancery convey.